## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Better Housing Foundation, an Ohio not for profit corporation; Lindran Properties, LLC, an Illinois limited liability company; BHF Chicago Housing Group B LLC, an Illinois limited liability company; and BHF Chicago Housing Group C LLC, an Illinois limited liability company,<br><br>    Plaintiffs,<br><br>v.<br><br>L. Mark DeAngelis, an individual; Integrus Realty Group, LLC, an Illinois limited liability company; and Desak Development Corp., an Illinois corporation,<br><br>    Defendants. | Case Number: 1:18-cv-07070<br><br>Judge Charles R. Norgle, Sr.<br><br>**JURY DEMAND** |

## SECOND AMENDED COMPLAINT

Plaintiffs Better Housing Foundation, an Ohio not for profit corporation ("BHF"); Lindran Properties, LLC, an Illinois limited liability company ("Lindran"); BHF Chicago Housing Group B LLC, an Illinois limited liability company ("BHF B"); and BHF Chicago Housing Group C LLC, an Illinois limited liability company ("BHF C"), for their Second Amended Complaint against Defendants: L. Mark DeAngelis, an individual ("DeAngelis"); Integrus Realty Group, LLC, an Illinois limited liability company ("Integrus"); and Desak Development Corp., an Illinois corporation ("Desak"), hereby state and allege as follows:

## Introduction

The Defendants received millions of dollars in acquisition and property management fees related to the Plaintiffs' purchase of three portfolios of multi-family real properties (collectively, the "Properties"), but Defendants provided the Plaintiffs deeply flawed due diligence prior to purchase and then grossly mismanaged the properties. The Defendants did not maintain leases, failed to keep accurate rent rolls, failed to account for the Properties' funds, and failed to secure tenant income certifications as required by certain tax regulatory bond agreements encumbering the Properties.

BHF is an Ohio not for profit corporation and 501(c)(3) charity focused on affordable housing, and is the sole member/owner of three (3) separate entities: Lindran; BHF B; and BHF C. Each of those three (3) respective entities acquired a separate portfolio of multi-family real properties in Chicago, Illinois. To acquire each portfolio, the Illinois Finance Authority issued multi-family housing revenue bonds and loaned the funds to Lindran, BHF B, and BHF C, respectively, through the vehicle of a trust, with the trustee being Wilmington Trust. As part of the bond issuance, the portfolios were subject to certain requirements set forth in the Tax Regulatory Agreements, among others.

BHF contracted with Defendant Desak to act as its consultant and agent in acquiring, designing, planning, financing and rehabilitating the Properties included in each of the three (3) separate property portfolios (respectively, the "Projects") purchased by Lindran, BHF B and BHF C, respectively. After their respective purchases, Lindran, BHF B, and BHF C contracted with Defendant Integrus to act as the post-purchase management agent for all of the Properties. Defendant DeAngelis is a principal of both Desak and Integrus, was the manager of Lindran, and was the primary person responsible for the management and handling of funds related to the

2

Properties. Desak made misrepresentations and breached its acquisition services agreements with BHF in numerous ways, including, but not limited to, failing to act in accordance with the terms of the agreements, taking actions aimed to boost its consulting fees, using unreasonable methodologies to forecast financial returns, and by failing to adequately and accurately recommend capital reserves or rehabilitation estimates. DeAngelis and Integrus mismanaged the Properties by failing to maintain adequate records, by not complying with the requirements set forth in the Tax Regulatory Agreements and Bond Documents, and failed to report to BHF on substantive issues such as numerous pending City of Chicago building code alleged violations and lawsuits. The collective breaches by Defendants caused Plaintiffs substantial damage to their respective multi-family real property portfolio, placed Plaintiffs at risk of losing certain tax benefits and incentives, and forced Plaintiffs to incur excessive attorney fees defending actions brought by the City of Chicago alleging that the conditions of the Properties violate the City's building code. Integrus also misrepresented the condition of the Properties to BHF, and then obtained a purported release of obligations predicated upon its misrepresentations and material omissions. Furthermore, the purported release is still subject to and conditioned upon Integrus providing a final accounting for the Properties and complying with other turnover obligations which Integrus has not fulfilled. Defendants have left the Plaintiffs to defend themselves without proper accountings, leases, rent rolls, or capital required to maintain the Properties.

## Parties

1.      The Plaintiffs:

(a)      BHF is an Ohio non-profit corporation, whose principal place of business is located in Dublin, Ohio and is it a citizen of Ohio. BHF is the sole member of Lindran, BHF B, and BHF C.

(b)      Lindran is an Illinois limited liability company, whose principal place of business is in Chicago, IL.

(c)      BHF B is an Illinois limited liability company, whose principal place of business is in Chicago, IL.

(d)      BHF C is an Illinois limited liability company, whose principal place of business is in Chicago, IL.

2.      The Defendants:

(a)      DeAngelis is an individual residing and domiciled in Chicago, IL, and is a citizen of the State of Illinois.

(b)      Integrus is an Illinois limited liability company. DeAngelis is one of its' two (2) members: DeAngelis is a citizen of Illinois. The other member of Integrus is an individual who maintains a residence in Illinois, but recently rented an apartment in Florida and has a subjective intent to reside there in the long term, and is therefore domiciled and a citizen of the State of Florida.[1]

(c)      Desak is an Illinois corporation, whose principal place of business is in Chicago, IL. Desak is a citizen of the State of Illinois.

---

[1] Integrus's counsel of record confirmed that there are only two members of Integrus and supplied the information stated regarding its members' citizen status. The other member's name is not stated out of respect for confidentiality, but can be provided upon the Court's request.

**Jurisdiction and Venue**

3.　　This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that this is an action between citizens of different states: BHF is an Ohio non-profit corporation, whose principal place of business is located in Dublin, Ohio, is a citizen of Ohio, and which is the sole member of each of the three Illinois Limited Liability Company Plaintiffs. DeAngelis and Desak are citizens of Illinois. Integrus is an Illinois limited liability company, which has two (2) members, one of which is a citizen of the State of Illinois, and the other is a citizen of the State of Florida (see above for more detailed information). The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4.　　Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(a) in that this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

**Facts Common to All Counts**

**A.　The Acquisitions of the Portfolios**

5.　　On or about July 29, 2016, BHF, through Lindran, acquired certain of the Properties collectively known as Portfolio A (the "Portfolio A Properties"). A list of the addresses of the Portfolio A Properties is attached hereto as Exhibit "A" and incorporated herein by reference.

6.　　As part of the acquisition, BHF and Desak entered into an Acquisition Services Agreement relative to Lindran's purchase of the Portfolio A Properties. A true and correct copy of the Acquisition Services Agreement between BHF and Desak for the Portfolio A Properties is attached hereto as Exhibit "B" and incorporated herein by reference.

7.      On July 29, 2016, Lindran and Integrus entered into a Management Agreement for Integrus to manage the Portfolio A Properties.  A true and correct copy of the Management Agreement for the Portfolio A Properties ("Portfolio A Management Agreement") is attached hereto as Exhibit "C" and incorporated herein by reference.

8.      The Portfolio A Properties are subject to Tax Regulatory Agreements dated July 1, 2016.   True and correct copies of the Tax Regulatory Agreements for the Portfolio A Properties are attached hereto as Group Exhibit "D" and incorporated herein by reference.

9.      On or about May 1, 2017, BHF, through BHF B, acquired certain of the Properties collectively known as Portfolio B ("Portfolio B Properties").  A list of the addresses of the Portfolio B Properties is attached hereto as Exhibit "E" and incorporated herein by reference.

10.      As part of the acquisition, BHF and Desak entered into an Acquisition Services Agreement relative to BHF B's purchase of the Portfolio B Properties.  A true and correct copy of the Acquisition Services Agreement for the Portfolio B Properties is attached hereto as Exhibit "F" and incorporated herein by reference.

11.      On May 1, 2017, BHF B and Integrus entered into a Management Agreement for Integrus to manage the Portfolio B Properties.  A true and correct copy of the Management Agreement for the Portfolio B Properties ("Portfolio B Management Agreement") is attached hereto as Exhibit "G" and incorporated herein by reference.

12.      The Portfolio B Properties are subject to the Tax Regulatory Agreements dated May 1, 2017.  True and correct copies of the Tax Regulatory Agreements for the Portfolio B Properties are attached hereto as Group Exhibit "H" and incorporated herein by reference.

13.      On or about March 1, 2018, BHF, through BHF C, acquired certain of the Properties collectively known as Portfolio C ("Portfolio C Properties").  A list of the addresses of

the Portfolio C Properties is attached hereto as Exhibit "I" and incorporated herein by reference.

14.     As part of the acquisition, BHF C and Desak entered into an Acquisition Services Agreement relative to BHF C's purchase of the Portfolio C Properties. A true and correct copy of the Acquisition Services Agreement for the Portfolio C Properties is attached hereto as Exhibit "J" and incorporated herein by reference.

15.     On March 1, 2018, BHF C and Integrus entered into a Management Agreement for Integrus to manage the Portfolio C Properties. A true and correct copy of the Management Agreement for the Portfolio C Properties ("Portfolio C Management Agreement") is attached hereto as Exhibit "K" and incorporated herein by reference.

16.     The Portfolio C Properties are subject to the Tax Regulatory Agreements dated March 1, 2018. True and correct copies of the Tax Regulatory Agreements are attached hereto as Group Exhibit "L" and incorporated herein by reference.

**B.      Defendants' Responsibilities, Obligations, and Payments**

**The Acquisition Services Agreements and Consulting Fees**

17.     Pursuant to the Acquisition Services Agreements, Desak received from the Plaintiffs: $548,761.15 for Portfolio A; $2,809,009.45 for Portfolio B; and $556,570.53 for Portfolio C (the "Consulting Fees").

18.     The Plaintiffs paid the approximately $4,000,000 in Consulting Fees to Desak for Desak to assume responsibility for the following actions on behalf of the BHF, a non-profit charity[2]:

---

[2] Desak is referred to as "Consultant" within each of the Acquisition Services Agreements for the Portfolio A Properties, the Portfolio B Properties, and the Portfolio C Properties. The specific actions to be performed by Desak on behalf of BHF with respect to the Portfolio A Properties, the Portfolio B Properties, and the Portfolio C Properties are set forth within Section 2 of each of the three agreements. *See* Exhibits B, F and J.

**Section 2.** *Acquisition Consulting Services.* Consultant shall render services in connection with negotiating, acquiring, and rehabilitating the Projects, including but not limited to the following, in each case in accordance with this Agreement and the Bond Documents (collectively, the "Consulting Services"):

(a)     Acquisition.

    (1) (i) identifying the properties to be acquired, (ii) estimating the cost of acquisition and rehabilitation of the Projects, (iii) determining the rehabilitation period and (iv) preparing a monthly-estimated rehabilitation chart reflecting the rehabilitation services required each month;

    (2) communicating and negotiating with the sellers of the Projects with respect to all matters relating to the acquisition of the Projects, including, but not limited to, negotiating the purchase and sale agreements for the Projects and ancillary agreements related thereto;

    (3) advancing any and all earnest money, including extension payments, as required by the sellers;

    (4) preparing and submitting to Owner, for Owner's approval, a proposed budget covering all anticipated costs of negotiation, acquisition, designing, planning, financing and renovation with respect to the Projects, including expected financing costs, reserves, etc.;

(b)     Transaction Structuring.

    (1) identifying and recommending the source of financing for the Projects and aiding in the review and negotiation of terms of the Bond Documents;

    (2) in connection with the property manager for the Projects, causing to be prepared financial projections for the Projects to correspond with the plan of finance for the Projects, which financial projections include (i) resident services and amenities, (ii) monthly rental rates by unit, (iii) absorption/lease-up tables, (iv) other ancillary income, and (v) operating expenses for the Projects;

    (3) assisting in obtaining a rating on the Bonds, including preparing an application and presentations for, and coordinating site visits with, the Rating Agency;

(c)     Governmental Approval.

    (1) causing the Projects, through the professionals and consultants approved by Owner, to comply with (i) the Issuer's requirements for authorizing and issuing the Bonds, including corresponding with the Issuer, preparing an application and submitting related documents necessary to obtain authorization of the Bonds, and (ii) any applicable federal, state and municipal laws, regulations and ordinances, including, but not limited to, obtaining all necessary building permits, zoning designations, variances, special use permits, approvals, certificates of occupancy and other entitlements necessary for the

36339184v2
CHI 69011751v2

19.     Section 2 of the Acquisition Services Agreement further describes Desak's duties and obligations including, (i) the obligation to obtain all necessary governmental approvals to rehabilitate the Properties (including building permits) as set forth in Section 2(c); (ii) rehabilitating and renovating the Properties as required by Section 2(e)(1-6) (including setting

budgets, plans for renovation, implementing administrative and financial procedures and controls, inspecting progress of the rehabilitation, and renovating properties as required by leases and other occupancy agreements including HAP contracts); (iii) maintaining records and making application for exemption from *ad volorem* taxes as required by section 2(g); and (iv) keeping the Owner informed, on a regular basis, of the rehabilitation of the Properties as required by Section 2(h).

20.     Despite receiving approximately $4,000,000.00 in Consulting Fees, Desak breached its obligations required by the Acquisition Services Agreements in at least the following respects:

(a)     Failed to negotiate an arm's length, market supported purchase and sale price for the Projects supported by commercially reasonable underwriting and factual data;

(b)     Failed to prepare, review and implement in a commercially reasonable manner, the Acquisition Budget (defined in the Acquisition Agreement);

(c)     Failed to prepare, review, and implement in a commercially reasonable manner the budgets and financial models and projections required in 2(a)(1) and 2(a)(4) of the Acquisition Agreement;

(d)     Failed to adequately estimate the rehabilitation costs related to the Properties in a commercially reasonable manner;

(e)     Failed to obtain all governmental approvals necessary to rehabilitate the Properties;

(f)     Failed to implement the rehabilitation, improvements, and inspecting the progress of the rehabilitation, and renovation of interior tenant improvements, as required by Section (2)(e) (1-6) of the Acquisition Services Agreement;

(g)     Failed to adequately maintain records relating to the Properties and rehabilitation of same, including failure to prepare all necessary records to make application for exemption from *ad valorem* taxes;

(h)     Failed to review and assess in a commercially reasonable manner the Property Condition Assessment's ("PCA") and appraisals for the Properties;

(i)     Failed to adequately assist and prepare the landlord owners to handle all local laws affecting the Properties; and

(j)     Failed to report to ownership regarding the projects and failed to perform other duties and services required for the acquisition, design, financing, and rehabilitation of the Properties.

## The Management Agreements and Management Fees

21.     In exchange for its obligation to perform its management duties set forth in the Management Agreements for the three portfolios of the Properties, Integrus received: **(i)** 4.5% of all rental receipts for the Properties; **(ii)** a technology fee of $5.00 per month per unit ("Technology Fee"); **(iii)** a specific Compliance Oversight Fees of $2.50 per unit per month to oversee and maintain the Properties as required by the Bonds and HAP Contracts; and **(iv)** other fees as set forth in the Management Agreements (collectively, the "Management Fees").

22.     Integrus has not provided Plaintiffs an accounting of the total Management Fees paid for the Portfolio A Properties, the Portfolio B Properties, or the Portfolio C Properties.

23.     Integrus was paid the Management Fees to take on various obligations on behalf of Lindran, BHF B and BHF C, whose sole member is BHF a non-profit charity, as follows:

(a)     To open accounts for each respective portfolio, and be responsible for the money related to the Properties, pursuant to Section 2.2 of the Management Agreements;

(b)     To maintain separate security deposit accounts, pursuant to Section 2.3 of the Management Agreements;

(c)     To use reasonable efforts to keep the Properties rented and lease the Properties, pursuant to Article 3 of the Management Agreements;

(d)     To manage the Properties as required by Section 142 of the Internal Revenue Code, the Tax Regulatory Agreements (the "Regulatory Requirements"), as required by Section 3.5 of the Management Agreements;

(e)     Operating the Properties as required by the Regulatory Requirements includes, but is not limited to, the following:

(A) To cause the apartment units in the Properties to be leased to suitable tenants who comply with all regulations regarding eligibility of the Properties in accordance with the Regulatory Requirements;

(B) To obtain from all tenants in the Properties annual reports from such tenants concerning their incomes and family sizes and any other information needed to verify eligibility in accordance with the Regulatory Requirements;

(C) To execute a lease for any rental unit only upon first obtaining certification from the tenant, and such other information as may be necessary for the Agent to determine income criteria for low-income housing, that he or she satisfies the income criteria for low-income housing in accordance with the Regulatory Requirements;

(D) To prepare for Owner's signature, and then to file in a proper manner, the annual certifications required by the provisions of law and the terms of the Regulatory Requirements related to the Bonds; and

(E) To cause the Properties to be operated in a manner that complies with all other statutes, regulations and agreements, including the Regulatory Requirements.

220967981.1 95897/337723

(f)     To collect rents and security deposits pursuant to Section 4.1 of the Management Agreements;

(g)     To prepare operating budgets, verification forms and lease forms, as required by Article 7 of the Management Agreements;

(h)     To provide monthly reports, and maintain books and records as required by Sections 7.3 and 7.4 of the Management Agreements;

(i)     To make repairs and replacements and to reasonably preserve the Properties, and make all necessary alterations to comply with lease requirements, governmental regulations, and other requirements, and otherwise maintain the Properties as required by Article 10 of the Management Agreements;

(j)     To make structural alterations pursuant to Section 10.2 of the Management Agreements; and,

(k)     To take other such obligations as required by the Management Agreements.

24.     Integrus breached its obligations required by the Management Agreements in the following respects:

(a)     Failed to maintain proper accounting for the Properties, in any respect;

(b)     Failed to provide any financial reporting;

(c)     Failed to account for rents or other capital improvement monies;

(d)     Failed to deploy capital improvement monies in a commercially reasonable manner;

(e)     Failed to remit rents or other monies to the proper financial trustee;

220967981.1 95897/337723

(f)　　Failed to maintain leases and failed to accurately and completely document tenancy or occupancy in the Properties;

(g)　　Failed to obtain the requisite Tenant Income Certifications and supporting documentation including failure to submit annual Certifications to the United States Treasury and State of Illinois to meet the affordability requirements set forth in the Tax Regulatory Agreements;

(h)　　Failed to provide necessary notices of City citations to Owner or BHF;

(i)　　Failed to utilize proper lease forms in accordance with BHF and Owner instructions;

(j)　　Failed to provide sufficient and properly trained staff or on-site personnel to manage the Properties;

(k)　　Failed to remit security deposits to a new management company in a timely manner;

(l)　　Failed to account for security deposits as required;

(m)　　Failed to pay expenses in accordance with the Management Agreement; and

(n)　　Failed to produce property budgets, marketing plans or evidence thereof, maintain and repair the Properties, maintain utilities, services and other contracts in a commercially reasonable manner.

25.　　At the time the Portfolio A transaction closed, DeAngelis was the "Manager" of Lindran.　A true and correct copy of Lindran's Articles of Organization and Operating Agreement reflecting DeAngelis, individually, as Manager, are collectively attached hereto as group Exhibit "M" and incorporated herein by reference.

26.     DeAngelis, individually, was the sole signatory on the financial accounts for the Plaintiffs related to the Properties. The accounts were held at Fifth Third Bank.

27.     As sole signatory, only DeAngelis controlled the funds and accounts for the Properties. Even the President and other corporate officers of BHF did not have access to the funds and accounts for the Properties at Fifth Third.

28.     DeAngelis had sole control and management of the BHF funds, and is the sole individual with knowledge of what transpired in those accounts.

29.     DeAngelis further held himself out to third parties as a corporate officer of BHF. Attached hereto as Exhibit "N" is an engagement letter which purports to be between BHF and the law firm of Chuhak and Tecson P.C. DeAngelis executed this letter agreement as "assistant vice secretary" of BHF. DeAngelis has held himself out as a corporate officer of BHF.

30.     Due to DeAngelis position as Manager of Lindran, execution of documents as corporate officer, role as sole individual signatory for BHF, Lindran, BHF B, and BHF C financial accounts, DeAngelis owes fiduciary duties to BHF, Lindran, BHF B, and BHF C.

31.     As a result of the above described breaches, misrepresentations, and failures of Desak, Integrus, and DeAngelis, Plaintiffs suffered substantial damages, arising out of their acquisition of Properties that required extensive repairs well in excess of the anticipated costs projected by Defendants, their overpayment for Properties not negotiated by Defendants at arm's length or based on a market supported price, as well as the diminution in value of the Properties, loss of rents, loss of government funding for low income tenants, legal fees to defend building code lawsuits and other disputes, and other such damages which are still being determined, all in excess of $10,000,000.00.

14

C. **Termination of Integrus, The Gross Omissions and Misrepresentations, and the Termination and Release Agreements**

32.     Shortly after the acquisition of Portfolio C, DeAngelis, individually, and as Manager of Integrus, approached BHF about relinquishing managerial duties for all of the Properties.

33.     BHF also determined that DeAngelis and Integrus were not equipped to handle the large scale of Properties that BHF had acquired, and were dissatisfied with Integrus and DeAngelis's management of the Properties.

34.     On or about March 15, 2018, DeAngelis submitted a written statement to the BHF Board of Directors regarding the status of the Properties (the "Property Statement"). A true and correct copy of the Property Statement is attached hereto as Exhibit "O" and incorporated herein by reference.

35.     The Property Statement intentionally mischaracterizes the condition of the Portfolio A and Portfolio B Properties, intentionally omits the numerous City of Chicago pending lawsuits for breaches of the Chicago Building Code and other municipal ordinances, and fails to state numerous facts which are material and relevant to the BHF Board of Director's decision-making process.

36.     Attached hereto as Exhibit "P" is a summary list of the pending City of Chicago lawsuits related to the Properties, based upon a search of records.

37.     Pursuant to Article 16 of the Management Agreements, Integrus had a duty to advise BHF of any pending lawsuits related to the Properties.

38. The relevant provision of the Management Agreements states as follows:

"Agent does not assume and is given no responsibility for compliance of the Properties or any building thereon or any equipment therein with the requirements of any building codes or with any statute, ordinance, law, or regulation of any government body or of any public authority or official thereof having jurisdiction, *except to notify Owner promptly or forward to Owner promptly any complaints, warnings, notices, or summonses received by Agent relating to such matter.*" [emphases added] Section 16.

39. At the time DeAngelis submitted the Property Statement to the Board of Directors, BHF has discovered at least 50 pending City of Chicago lawsuits.

40. DeAngelis intentionally omitted and failed to advise Plaintiffs of the pending lawsuits.

41. On or about April 23, 2018, based upon and in reliance upon the information presented by DeAngelis to BHF, BHF and DeAngelis executed two certain "Termination of Management Agreement and Release of Claims," one for Portfolio A and B, and another for Portfolio C ("collectively, the "Termination Agreements"). True and correct copies of the Termination Agreements are attached hereto as Exhibit "Q" and incorporated herein by reference.

42. The Termination Agreements contain purported releases of Integrus.

43. BHF would not have entered into the Termination Agreements and, specifically, the release language, had DeAngelis fully and accurately disclosed the condition of the Properties, the status of the tenants, the abated or terminated CHA HAP contracts and other assistance, the inaccurate or missing rent rolls, and actual proceeds from the Properties.

44. Furthermore, the Termination Agreements were conditioned upon Integrus proving a final accounting and complying with the turnover portions of the Management

Agreement, and cooperating with the new management company in the transition. The Termination Agreements state, in pertinent part, as follows:

> "The Management Agreements are hereby terminated effective as of the date hereof and shall hereafter be of no further force or effect; provided, however, the provision of the Management Agreements relating to transfer of property management functions, final accounting of funds and records, and transfer of the properties ..." *See Termination Agreements, Exhibit Q, Section 1.*

45. The Management Agreements provide for the following turnover obligations:

> "Agent shall deliver to Owner, within ninety (90) days after the end of the month in which this Agreement is terminated, any balance of monies due Owner or any tenant security deposits, or both, which were held by Agent with respect to the Properties, as well as a final accounting reflecting the balance of income and expenses with respect to the Properties as of the date of termination or withdrawal, and all records, contracts, leases, receipts for deposits, and other papers or documents which pertain to the Properties." *Exhibits C, G, and K.*

46. Integrus and DeAngelis failed to provide the final accounting and turnover the records, contracts, leases, receipts for deposit, and other papers or documents which pertain to the properties within ninety (90) days, as required by the Management Agreements and Termination Agreements.

## FIRST CLAIM FOR RELIEF
**Breach of Acquisition Services Agreement**
**(BHF Claim Against Desak as to the Portfolio A Properties)**

47.     Plaintiff BHF restates and realleges paragraphs 1-46 above, as if fully set forth herein.

48.     BHF retained Desak for the acquisition and rehabilitation of the Portfolio A Properties as evidenced by the Acquisition Services Agreement between BHF and Desak attached hereto as Exhibit B.

49.     Desak breached the Acquisition Services Agreement between BHF and Desak by failing to supervise the rehabilitation of the Portfolio A Properties and confirming work was performed.

50.     Desak failed to keep BHF informed of the progress of the rehabilitation, and failed to supervise the improvements of tenant properties to the conditions required by the leases.

51.     With respect to the Portfolio A Properties, and despite payment of the Consulting Fees, Desak failed to perform its obligations required by the Acquisition Services Agreement between BHF and Desak in the following respects:

(a)     Failed to negotiate an arm's length, market supported purchase and sale price for the Projects supported by commercially reasonable underwriting and factual data. The Portfolio A Properties were purchased at an inflated price to artificially raise Desak's Consulting Fees, and were purchased for more than market supported data suggested;

(b)     Failed to prepare, review, and implement in a commercially reasonable manner, the Acquisition Budget (defined in the Acquisition Agreement) with capital

reserves moving forward. Desak failed to set or recommend any capital reserves for any of the projects;

(c)     Failed to adequately estimate the rehabilitation costs related to the Projects in a commercially reasonable manner. Desak did not supervise the rehabilitation and has not rehabilitated the Portfolio A Properties. The Portfolio A Properties are in disrepair and do not meet the standards set by the City of Chicago building department, the Chicago Housing Authority, and the leases;

(d)     Failed to review and assess in a commercially reasonable manner the property condition assessment reports and appraisals for the Portfolio A Properties. Desak representatives have challenged the sufficiency and adequacy of the PCAs and appraisals for the Portfolio A Properties. Desak utilized those and was paid for those deficient reports by BHF. It was Desak's obligation to ensure that the Portfolio A Properties were purchased using reliable reports and data; and

(e)     Failed to adequately assist and prepare the landlord owners to handle all local laws affecting the Properties. Desak has completely failed to handle the local laws affecting the Portfolio A Properties, as evidenced by the numerous City of Chicago building code lawsuits currently pending.

52.     The Portfolio A Properties are subject to well over 10 lawsuits from the City of Chicago, detailing how the Portfolio A Properties were not properly rehabilitated by Desak, as required by the Acquisition Services Agreement between BHF and Desak. *See Exhibit B.*

53.     The City of Chicago inspectors detail numerous alleged defects in the Portfolio A Properties which demonstrate Desak's failures under the Acquisition Services Agreement.

54.    Desak has not provided BHF with an Acquisition Budget as required by Section 2(b) of the Acquisition Services Agreement between BHF and Desak, or other budgets as required by Section 2. *See Exhibit B.*

55.    To the extent Desak believes that the property condition assessment reports performed for the Portfolio A Properties constitute an Acquisition Budget, Desak's own representatives have questioned and challenged the adequacy of those property condition assessment reports.

56.    Desak's failure to adequately assess the value of the Portfolio A Properties, and failure to manage and rehabilitate the Portfolio A Properties, has caused BHF substantial damages including costs to defend City lawsuits, fines and penalties, diminution in the value of the Portfolio A Properties, loss of rental income, and related damages.

57.    As a result of Desak's breaches of the Acquisition Services Agreement between BHF and Desak, BHF has had to spend substantial funds rehabilitating the Portfolio A Properties, and continues to do so, though the full extent of the rehabilitation costs have not yet fully been determined.

WHEREFORE, Plaintiff Better Housing Foundation prays that this Court:

A.    Enter a money judgment against Defendant Desak Development Corp. for Better Housing Foundation's damages in an amount in excess of $1,000,000, plus interest, fees, costs, and attorneys' fees, the specific amount of which will be determined at trial; and

B.    Such other and further relief as the Court deems just and equitable.

## SECOND CLAIM FOR RELIEF
### Breach of Acquisition Services Agreements
### (BHF Claim Against Desak as to the Portfolio B Properties)

58.     Plaintiff BHF restates and realleges paragraphs 1-46 above, as if fully set forth herein.

59.     BHF retained Desak for the acquisition and rehabilitation of the Portfolio B Properties as evidenced by the Acquisition Services Agreement between BHF and Desak attached hereto as Exhibit F.

60.     With respect to the Portfolio B Properties, and despite payment of the Consulting Fees, Desak failed to perform its obligations required by the Acquisition Services Agreement between BHF and Desak in the following respects:

(a)     Failed to negotiate an arm's length, market supported purchase and sale price for the Projects supported by commercially reasonable underwriting and factual data. The Portfolio B Properties were purchased at an inflated price to artificially raise Desak's Consulting Fees, and were purchased for more than market supported data would suggest;

(b)     Failed to prepare, review, and implement in a commercially reasonable manner, the Acquisition Budget (defined in the Acquisition Agreement) with capital reserves moving forward. Desak failed to set or recommend any capital reserves for any of the Portfolio B Properties;

(c)     Failed to adequately estimate the rehabilitation costs related to the Projects in a commercially reasonable manner. Desak did not supervise the rehabilitation and has not rehabilitated the Portfolio B Properties. The Portfolio B Properties are in disrepair

and do not meet the standards set by the City of Chicago building department, the Chicago Housing Authority, and the leases;

      (d)    Failed to review and assess in a commercially reasonable manner the property condition assessment reports and appraisals for the Portfolio B Properties. The property condition assessment reports and appraisals for the Portfolio B Properties were either deficient or do not exist. Desak utilized those reports and was paid for those deficient reports by BHF. It was Desak's obligation to ensure that the Portfolio B Properties were purchased using reliable reports and data; and

      (e)    Failed to adequately assist and prepare the landlord owners to handle all local laws affecting the Properties. Desak has completely failed to handle the local laws affecting the Portfolio B Properties, as evidenced by the numerous City of Chicago building code lawsuits currently pending or in process.

61.    BHF anticipates that the Portfolio B Properties will be subject to numerous additional lawsuits from the City of Chicago, detailing the failure of Desak to rehabilitate the Portfolio B Properties as required by the Acquisition Services Agreement between BHF and Desak. (Exhibit F).

62.    The City of Chicago inspectors have alleged numerous defects in the Portfolio B Properties, which demonstrate Desak's breach of its obligations set forth in the Acquisition Services Agreement between BHF and Desak.

63.    Desak has not provided BHF with an Acquisition Budget as required by Section 2(a)(4) of the Acquisition Services Agreement.(Exhibit F).

64.    Desak's failure to adequately assess the value of the Portfolio B Properties, and failure to manage and rehabilitate the Portfolio B Properties, caused BHF substantial damages

including costs to defend City lawsuits, fines and penalties, diminution in the value of the Portfolio B Properties, loss of rental income, and related damages.

65.     As a result of Desak's breaches of the Acquisition Services Agreement between BHF and Desak, BHF has had to spend substantial funds rehabilitating the Portfolio B Properties, and continues to do so, though the full extent of the rehabilitation costs have not yet fully been determined.

WHEREFORE, Plaintiff Better Housing Foundation prays that the Court:

A.      Enter a money judgment against Defendant Desak Development Corp. for Plaintiff Better Housing Foundation's damages in an amount in excess of $1,000,000, plus interest, fees, costs, and attorneys' fees, the specific amount of which will be determined at trial; and

B.      Such other and further relief as the Court deems just and equitable.

**THIRD CLAIM FOR RELIEF**
**Breach of Acquisition Services Agreements**
**(BHF Claim Against Desak as to the Portfolio C Properties)**

66.     Plaintiff BHF restates and realleges paragraphs 1-46 above, as if fully set forth herein.

67.     BHF retained Desak for acquisition and rehabilitation of the Portfolio C Properties, as evidenced by the Acquisition Services Agreement between BHF and Desak attached hereto as Exhibit J.

68.     Desak breached the Acquisition Services Agreement between BHF and Desak by failing to supervise the rehabilitation of the Portfolio C Properties and confirming work was performed.

69.     With respect to the Portfolio C Properties, and despite payment of the Consulting

Fees, Desak failed to perform its obligations required by the Acquisition Services Agreement between BHF and Desak in the following respects:

(a)     Failed to negotiate an arm's length, market supported purchase and sale price for the Projects supported by commercially reasonable underwriting and factual data. The Portfolio C Properties were purchased at an inflated price to artificially raise Desak's Consulting Fees, and were purchased for more than market supported data would suggest;

(b)     Failed to prepare, review, and implement in a commercially reasonable manner, the Acquisition Budget (defined in the Acquisition Agreement) with capital reserves moving forward. Desak failed to set or recommend any capital reserves for any of the Portfolio C Properties;

(c)     Failed to adequately estimate the rehabilitation costs related to the Projects in a commercially reasonable manner. Desak did not supervise the rehabilitation and has not rehabilitated the Portfolio C Properties;

(d)     Failed to review and assess in a commercially reasonable manner the property condition assessment reports and appraisals for the Portfolio C Properties. The property condition assessment reports and appraisals for the Portfolio C Properties were either deficient or do not exist. Desak utilized those reports and was paid for those deficient reports by BHF. It was Desak's obligation to ensure that the Portfolio C Properties were purchased using reliable reports and data; and

(e)     Failed to adequately assist and prepare the landlord owners to handle all local laws affecting the Properties. Desak has completely failed to handle the local laws

affecting the Portfolio C Properties, as evidenced by the numerous City of Chicago building code lawsuits currently pending or in process.

70.     Desak has not provided BHF with an Acquisition Budget as required by Section 2(a)(4) of the Acquisition Services Agreement. (Exhibit J).

71.     There is no evidence that the Portfolio C Properties were rehabilitated as required by the funding received for such rehabilitation.

72.     Desak's failure to adequately assess the value of the Portfolio C Properties, and failure to manage and rehabilitate the Portfolio C Properties, caused BHF substantial damages including costs to defend City lawsuits, fines and penalties, diminution in the value of the Portfolio C Properties, loss of rental income, and related damages.

73.     As a result of Desak's breaches of the Acquisition Services Agreement between BHF and Desak, BHF has had to spend substantial funds rehabilitating the Portfolio C Properties, and continues to do so, though the full extent of the rehabilitation costs have not yet fully been determined.

WHEREFORE, Plaintiff Better Housing Foundation prays that the Court:

A.      Enter a money judgment against Defendant Desak Development Corp. for Plaintiff Better Housing Foundation's damages in an amount in excess of $1,000,000, plus interest, fees, costs, and attorneys' fees, the specific amount of which will be determined at trial; and

B.      Such other and further relief as the Court deems just and equitable.

## FOURTH CLAIM FOR RELIEF
### Breach of Management Agreement
### (Lindran Claim Against Integrus)

74.     Plaintiff Lindran restates and realleges paragraphs 1-46 above, as if fully set forth herein.

75.     As provided for in the Management Agreement between Lindran and Integrus, attached as Exhibit C, Integrus received Management Fees to perform the following obligations on behalf of Lindran:

> (a)     To open accounts for Portfolio A Properties, and be responsible for the money related to the Properties, pursuant to Section 2.2 of the Portfolio A Management Agreement;

> (b)     To maintain separate security deposit accounts, pursuant to Section 2.3 of the Portfolio A Management Agreement;

> (c)     To use reasonable efforts to keep the Properties rented and lease the Properties, pursuant to Article 3 of the Portfolio A Management Agreement;

> (d)     To manage the Properties as required by Section 142 of the Internal Revenue Code, the Tax Regulatory Agreements (the "Regulatory Requirements"), as required by Section 3.5 of the Portfolio A Management Agreement;

> (e)     Operating the Portfolio A Properties as required by the Regulatory Requirements includes, but is not limited to, the following:

220967981.1 95897/337723

(A) To cause the apartment units in the Properties to be leased to suitable tenants who comply with all regulations regarding eligibility of the Properties for the Tax Exempt Bonds;

(B) To obtain from all tenants in the Properties the right to receive annual reports from such tenants concerning their incomes and family sizes and any other information needed to verify eligibility;

(C) To execute a lease for any rental unit in respect of which Tax Exempt Bonds have been allocated to the Owner only upon first obtaining certification from the tenant, and such other information as may be necessary for the Agent to determine income criteria for affordable housing, that he or she satisfies the income criteria for affordable housing;

(D) To prepare for Owner's signature, and then to file in a proper manner, the annual certifications required by the provisions of law related to the Bonds; and

(E) To cause the Properties to be operated in a manner that complies with all other statutes, regulations and agreements, including those relating to the Bonds.

(f)     To collect rents and security deposits pursuant to Section 4.1 of the Portfolio A Management Agreement;

(g)     To prepare operating budgets, verification forms and lease forms, as required by Article 7 of the Portfolio A Management Agreement;

(h)     To provide monthly reports, and maintain books and records as required by Sections 7.3 and 7.4 of the Portfolio A Management Agreement;

(i)     To make repairs and replacements and to reasonably preserve the Properties, and make all necessary alterations to comply with lease requirements, governmental regulations, and other requirements, and otherwise maintain the Properties as required by Article 10 of the Portfolio A Management Agreement;

(j)     To make structural alterations pursuant to Section 10.2 of the Portfolio A Management Agreement; and

(k)     Other such obligations as required by the Portfolio A Management Agreement.

76.     Integrus breached the Management Agreement between Lindran and Integrus in the following respects:

(a)     Failed to maintain proper accounting for the Portfolio A Properties, in any respect;

(b)     Failed to provide any financial reporting to Lindran;

(c)     Failed to account for rents or other capital improvement monies;

(d)     Failed to deploy capital improvement monies in a commercially reasonable manner;

(e)     Failed to remit rents or other monies to the proper financial trustee;

(f)     Failed to maintain leases in accordance with the Tax Regulatory Agreement, local laws, and failed to accurately and completely document tenancy or occupancy in the Properties;

(g)     Failed to obtain the requisite Tenant Income Certifications and supporting documentation including failure to submit annual Certifications to the United States Treasury and State of Illinois to meet the affordability requirements set forth in the Tax Regulatory Agreements;

(h)     Failed to provide necessary notices of City citations to Lindran or BHF;

(i)     Failed to utilize proper lease forms in accordance with BHF and Lindran instructions;

(j)    Failed to provide sufficient and properly trained staff or on-site personnel to manage the Properties;

(k)    Failed to remit security deposits to a new management company in a timely manner;

(l)    Failed to account for security deposits as required;

(m)    Failed to pay expenses in accordance with the Portfolio A Management Agreement; and

(n)    Failed to produce property budgets, marketing plans or evidence thereof, maintain and repair the Properties, maintain utilities, services and other contracts in a commercially reasonable manner.

(o)    Failed to provide the final accounting and comply with other turnover obligations.

77.    As a result of Integrus's failures to perform its obligations required by the Portfolio A Management Agreement, Lindran has been substantially damaged, including lost rents, pending or lost tax exempt status for real estate taxes, lost funds from federally subsidized housing voucher programs, diminution in value of Properties, damaged the Properties due to neglect and failure to maintain, and additional damages yet to be determined.

WHEREFORE, Plaintiff Lindran Properties, LLC, prays that the Court:

A.    Enter a money judgment against Defendant Integrus Realty Group, LLC, for Plaintiff Lindran Properties, LLC's damages in an amount in excess of $1,000,000, plus interest, fees, costs, and attorneys' fees, the specific amount of which will be determined at trial; and

B.    Such other and further relief as the Court deems just and equitable.

## FIFTH CLAIM FOR RELIEF
### Breach of Management Agreement
### (BHF B Claim Against Integrus)

78.    Plaintiff BHF B restates and realleges paragraphs 1-46 above, as if fully set forth herein.

79.    As provided for in the Management Agreement between BHF B and Integrus, attached as Exhibit F, Integrus received Management Fees to perform the following obligations on behalf of BHF B:

(a)    to open accounts for Portfolio B Properties, and be responsible for the money related to the Properties, pursuant to Section 2.2 of the Portfolio B Management Agreement;

(b)    Maintain separate security deposit accounts, pursuant to Section 2.3 of the Portfolio B Management Agreement;

(c)    To use reasonable efforts to keep the Properties rented and lease the Properties, pursuant to Article 3 of the Portfolio B Management Agreement;

(d)    To manage the Properties as required by Section 142 of the Internal Revenue Code, the Tax Regulatory Agreements (the "Regulatory Requirements"), as required by Section 3.5 of the Portfolio B Management Agreement;

(e)    Operating the Portfolio B Properties as required by the Regulatory Requirements includes, but is not limited to, the following:

(A) To cause the apartment units in the Properties to be leased to suitable tenants who comply with all regulations regarding eligibility of the Properties for the Tax Exempt Bonds and the LURA Restrictions;

(B) To obtain from all tenants in the Properties the right to receive annual reports from such tenants concerning their incomes and family sizes and any other information needed to verify eligibility;

(C) To execute a lease for any rental unit in respect of which Tax Exempt Bonds and subject to the LURA Restrictions, have been allocated to the Owner only upon first obtaining certification from the tenant, and such other information as may be necessary for the Agent to determine income criteria for low-income housing, that he or she satisfies the income criteria for low-income housing;

(D) To prepare for Owner's signature, and then to file in a proper manner, the annual certifications required by the provisions of law related to the Bonds; and

(E) To cause the Properties to be operated in a manner that complies with all other statutes, regulations and agreements, including those relating to the Bonds and the LURA Restrictions.

(f)     To collect rents and security deposits pursuant to Section 4.1 of the Portfolio B Management Agreement;

(g)     To prepare operating budgets, verification forms and lease forms, as required by Article 7 of the Portfolio B Management Agreement;

(h)     To provide monthly reports, and maintain books and records as required by Sections 7.3 and 7.4 of the Portfolio B Management Agreement;

(i)     To make repairs and replacements and to reasonably preserve the Properties, and make all necessary alterations to comply with lease requirements, governmental regulations, and other requirements, and otherwise maintain the Properties as required by Article 10 of the Portfolio B Management Agreement;

(j)     To make structural alterations pursuant to Section 10.2 of the Portfolio B Management Agreement; and,

(k)     Other such obligations as required by the Portfolio B Management Agreement.

80.     Integrus breached the Management Agreement between BHF B and Integrus in the following respects:

(a)     Failed to maintain proper accounting for the Portfolio B Properties, in any respect;

(b)     Failed to provide any financial reporting to BHF B;

(c)     Failed to account for rents or other capital improvement monies;

(d)     Failed to deploy capital improvement monies in a commercially reasonable manner;

(e)     Failed to remit rents or other monies to the proper financial trustee;

(f)     Failed to maintain leases in accordance with the Tax Regulatory Agreement, local laws, and failed to accurately and completely document tenancy or occupancy in the Properties;

(g)     Failed to obtain the requisite Tenant Income Certifications and supporting documentation including failure to submit annual Certifications to the United States Treasury and State of Illinois to meet the affordability requirements set forth in the Tax Regulatory Agreements;

(h)     Failed to provide necessary notices of City citations to BHF B or BHF;

(i)     Failed to utilize proper lease forms in accordance with BHF and BHF B instructions;

        (j)     Failed to provide sufficient and properly trained staff or on-site personnel to manage the Properties;

        (k)     Failed to remit security deposits to a new management company in a timely manner;

        (l)     Failed to account for security deposits as required;

        (m)     Failed to pay expenses in accordance with the Portfolio B Management Agreement; and

        (n)     Failed to produce property budgets, marketing plans or evidence thereof, maintain and repair the Properties, maintain utilities, services and other contracts in a commercially reasonable manner.

        (o)     Failed to provide the final accounting and comply with other turnover obligations.

81.     As a result of Integrus's failures to perform its obligations required by the Portfolio B Management Agreement, BHF B has been substantially damaged, including lost rents, pending or lost tax exempt status for real estate taxes, lost funds from federally subsidized housing voucher programs, diminution in value of the Properties, damaged Properties due to neglect and failure to maintain, and additional damages yet to be determined.

WHEREFORE, Plaintiff BHF Chicago Housing Group B LLC, prays that the Court:

A.     Enter a money judgment against Defendant Integrus Realty Group, LLC for Plaintiff BHF Chicago Housing Group B LLC's damages in an amount in excess of $1,000,000, plus interest, fees, costs, and attorneys' fees, the specific amount of which will be determined at trial; and

B.     Such other and further relief as the Court deems just and equitable.

## SIXTH CLAIM FOR RELIEF
### Breach of Management Agreement
### (BHF C Claim Against Integrus)

82.     Plaintiff BHF C restates and realleges paragraphs 1-46 above, as if fully set forth herein.

83.     As provided for in the Management Agreement between BHF C and Integrus, attached as Exhibit J, Integrus received Management Fees to perform the following obligations on behalf of BHF C:

(a)     to open accounts for Portfolio C Properties, and be responsible for the money related to the Properties, pursuant to Section 2.2 of the Portfolio C Management Agreement;

(b)     Maintain separate security deposit accounts, pursuant to Section 2.3 of the Portfolio C Management Agreement;

(c)     To use reasonable efforts to keep the Properties rented and lease the Properties, pursuant to Article 3 of the Portfolio C Management Agreement;

(d)     To manage the Properties as required by Section 142 of the Internal Revenue Code, the Tax Regulatory Agreements (the "Regulatory Requirements"), as required by Section 3.5 of the Portfolio C Management Agreement;

(e)     Operating the Portfolio C Properties as required by the Regulatory Requirements includes, but is not limited to, the following:

(A) To cause the apartment units in the Properties to be leased to suitable tenants who comply with all regulations regarding eligibility of the Properties in accordance with the Regulatory Requirements;

(B) To obtain from all tenants in the Properties annual reports from such tenants concerning their incomes and family sizes and any other information needed to verify eligibility in accordance with the Regulatory Requirements;

(C) To execute a lease for any rental unit only upon first obtaining certification from the tenant, and such other information as may be necessary for the Agent to determine income criteria for low-income housing, that he or she satisfies the income criteria for low-income housing in accordance with the Regulatory Requirements;

(D) To prepare for Owner's signature, and then to file in a proper manner, the annual certifications required by the provisions of law and the terms of the Regulatory Requirements related to the Bonds; and

(E) To cause the Properties to be operated in a manner that complies with all other statutes, regulations and agreements, including the Regulatory Requirements.

(f) To collect rents and security deposits pursuant to Section 4.1 of the Portfolio C Management Agreement;

(g) To prepare operating budgets, verification forms and lease forms, as required by Article 7 of the Portfolio C Management Agreement;

(h) To provide monthly reports, and maintain books and records as required by Sections 7.3 and 7.4 of the Portfolio C Management Agreement;

(i) To make repairs and replacements and to reasonably preserve the Properties, and make all necessary alterations to comply with lease requirements, governmental regulations, and other requirements, and otherwise maintain the Properties as required by Article 10 of the Portfolio C Management Agreement;

(j) To make structural alterations pursuant to Section 10.2 of the Portfolio C Management Agreement; and,

(k)    Other such obligations as required by the Portfolio C Management Agreement.

84.    Integrus breached the Management Agreement between BHF C and Integrus in the following respects:

(a)    Failed to maintain proper accounting for the Portfolio C Properties, in any respect;

(b)    Failed to provide any financial reporting to BHF C;

(c)    Failed to account for rents or other capital improvement monies;

(d)    Failed to deploy capital improvement monies in a commercially reasonable manner;

(e)    Failed to remit rents or other monies to the proper financial trustee;

(f)    Failed to maintain leases in accordance with the Tax Regulatory Agreement, local laws, and failed to accurately and completely document tenancy or occupancy in the Properties;

(g)    Failed to obtain the requisite Tenant Income Certifications and supporting documentation including failure to submit annual Certifications to the United States Treasury and State of Illinois to meet the affordability requirements set forth in the Tax Regulatory Agreements;

(h)    Failed to provide necessary notices of City citations to BHF C or BHF;

(i)    Failed to utilize proper lease forms in accordance with BHF and BHF C instructions;

(j)    Failed to provide sufficient and properly trained staff or on-site personnel to manage the Properties;

(k)     Failed to remit security deposits to a new management company in a timely manner;

(l)     Failed to account for security deposits as required;

(m)     Failed to pay expenses in accordance with the Portfolio C Management Agreement; and

(n)     Failed to produce property budgets, marketing plans or evidence thereof, maintain and repair the Properties, maintain utilities, services and other contracts in a commercially reasonable manner.

(o)     Failed to provide the final accounting and comply with other turnover obligations.

85.     As a result of Integrus's failures to perform its obligations required by the Portfolio C Management Agreement, BHF C has been substantially damaged, including lost rents, lost tax exempt status for real estate taxes for the Properties, lost funds from federally subsidized housing voucher programs, diminution in value of the Properties, damaged the Properties due to neglect and failure to maintain, and additional damages yet to be determined.

WHEREFORE, Plaintiff BHF Chicago Housing Group C LLC, prays that the Court:

A.     Enter a money judgment against Defendant Integrus Realty Group, LLC for Plaintiff BHF Chicago Housing Group C LLC's damages in an amount in excess of $1,000,000, plus interest, fees, costs, and attorneys' fees, the specific amount of which will be determined at trial; and

B.     Such other and further relief as the Court deems just and equitable.

## SEVENTH CLAIM FOR RELIEF
### Accounting
### (BHF, Lindran, BHF B, and BHF C Claim against Integrus and DeAngelis)

86.     Plaintiffs restate and reallege paragraphs 1-85 above, as if fully set forth herein.

87.     Plaintiffs demand an accounting from Integrus and DeAngelis for all of the Properties, setting forth the acquisition budgets, capital expenditures, and accounting funds and rents collected and expenses for each Property, tenant leases, rent rolls, tenant income certifications, certifications to municipal, state, and federal entities and agencies, and all documentation and information related to the Properties.

88.     Plaintiffs need this accounting, information, and documents, in order to perform its obligations pursuant to the Tax Regulatory Agreements, and other restrictions on the Properties, and obligations placed on Plaintiffs pursuant to the mortgages and bond documents.

89.     Plaintiffs have no adequate remedy at law.

90.     Even if the Plaintiffs were to obtain banking records and statements, due to the complex and difficult to discern nature, the Plaintiffs would not be able to determine where the funds went and whether the payments were appropriate. The bank statements obtained thus far do not show where funds have traversed and for what reasons. DeAngelis, as the only party who made the relevant transfers, payments, and deposits, can explain the nature and methodologies used on these accounts. Accordingly, the only way to determine the handling of funds and understand the financial transactions made by BHF, is to have Integrus and DeAngelis provide an accounting.

91.     There exists a fiduciary relationship between Plaintiffs and DeAngelis, as DeAngelis was the sole signatory on the Fifth Third Accounts, Manager of Lindran, held himself out as a corporate officer, and was entrusted with handling the funds and accounts related to these Properties, in addition to the other duties described in the Management Agreements.

92.     The Management Agreements provide for the Plaintiffs right to an accounting upon demand, and upon turnover of the Properties and termination of the Management Agreements

93.     The Properties' accounts were mutually held and are of a complex nature.

94.     Plaintiffs have made multiple demands for accounting, and further demand would be futile.

95.     Integrus and DeAngelis had a duty and obligation to maintain accounts, control funds, and manage the obligations of Plaintiffs relative to these Properties, and to provide an accounting.

WHEREFORE, Plaintiffs Better Housing Foundation, Lindran Properties, LLC, BHF Chicago Housing Group B LLC, and BHF Chicago Housing Group C LLC pray that the Court:

A.     Enter an order requiring the Defendants Integrus Realty Group, LLC and L. Mark DeAngelis prepare an accounting for all of the Portfolio A Properties, Portfolio B Properties and Portfolio C Properties and turn over such accounting and supporting documents within thirty (30) days; and

B.     Such other and further relief as the Court deems just and equitable.

### EIGHTH CLAIM FOR RELIEF
**Breach of Fiduciary Duties**
**(BHF, Lindran, BHF B, and BHF C Claim Against DeAngelis)**

96.     Plaintiffs restate and reallege paragraphs 1-95 above, as if fully set forth herein.

97.     DeAngelis was the primary person responsible for orchestrating, coordinating, and facilitating the management of the Properties.

98.     DeAngelis was the primary person responsible and sole signatory on the accounts for the Properties and handling funds related to the Properties.

99.     DeAngelis was the manager of Lindran.

100.     DeAngelis held himself out as a corporate officer of BHF and assumed the responsibility of fiduciary obligations for the company.

101.     Due to DeAngelis' exercise and control of over the Properties' funds and accounts, DeAngelis owed BHF, directly, and its wholly owned limited liability company subsidiaries Lindran, BHF B, and BHF C, fiduciary duties.

102.     DeAngelis had a special relationship of trust to BHF as DeAngelis exerted sole control over the financial accounts, was the only person with signing authority over the accounts, and held a unique relationship of trust and care.

103.     As an Ohio based charity, BHF relied upon DeAngelis to handle its matters.

104.     DeAngelis breached the fiduciary duties owed to BHF and to its wholly owned limited liability company subsidiaries, Lindran, BHF B, and BHF C, in the following respects:

a.     DeAngelis failed to keep proper records and accounting for the Properties;

b.     DeAngelis transferred monies to his own accounts (or accounts of entities he owned, in whole or in part, directly or indirectly), for personal use in violation of his fiduciary duties;

c.     DeAngelis failed to maintain the assets of BHF and of its wholly owned limited liability company subsidiaries, Lindran, BHF B, and BHF C, in accordance with a commercially reasonable duty of care;

d.     DeAngelis failed to ensure that the obligations of BHF, and those imposed on its wholly owned subsidiary entities, Lindran, BHF B, and BHF C, under the bond documents and Tax Regulatory Agreements were satisfied; and

e.    DeAngelis failed to track tenant income certifications, include the requisite languages in leases, and maintain affordability ratios.

105.    As a result of DeAngelis' breaches of his fiduciary duties, BHF and its wholly owned limited liability company subsidiaries have lost rents, lost tax exempt status for real estate taxes for the Properties, lost funds from federally subsidized housing voucher programs, suffered diminution in value of the Properties, damaged the Properties due to neglect and failure to maintain, lost funds directly taken from Plaintiffs' accounts, and additional damages yet to be determined.

WHEREFORE, Plaintiffs Better Housing Foundation, Lindran Properties, LLC, BHF Chicago Housing Group B LLC, and BHF Chicago Housing Group C LLC pray that the Court:

A.    Enter a money judgment against Defendant L. Mark DeAngelis in the amount in excess of $10,000,000, plus interest, fees, costs, and attorneys' fees, the specific amount of which will be determined at trial; and

C.    Such other and further relief as the Court deems just and equitable.

## NINTH CLAIM FOR RELIEF
### Misrepresentation
### (BHF, Lindran, BHF B, and BHF C Claim Against Desak)

106.    Plaintiffs restate and reallege paragraphs 1-46 above, as if fully set forth herein.

107.    In connection with each transaction, Desak executed certain Certificates of Consultant, which contains representations and warranties.

108.    A true and correct copy of the Certificates of Consultant for Portfolio A is attached hereto as Exhibit "R" and incorporated herein.

109.    A true and correct copy of the Certificates of Consultant for Portfolio B is attached hereto as Exhibit "S" and incorporated herein.

110. A true and correct copy of the Certificates of Consultant for Portfolio C is attached hereto as Exhibit "T" and incorporated herein.

111. Desak made various representations, including, but not limited to:

(a) Certifying that "Official Statement" statements and information relating to the Consultant are true, fair, accurate, and complaint and have no omitted material fact and are not misleading. *See Exhibits R-T*, Section 8.

(b) That there are no facts known to Consultant that it has failed to disclose to the Underwriter that "materially affect the operations, affairs, properties, conditions or prospects (financial or otherwise) of the Consultant and the Projects, or cause any of the documentation or information submitted to the Underwriter to be untrue or misleading. *See Exhibits R-T, Section 9*.

(c) That the Consultant has participated in preparing the "Pro Forma Financial Projections" attached as appendix E to the Official Statement and that they are mathematically correct, the assumptions underlying such forecasted financial information are reasonable, based upon its experience managing rental projects such as the Projects, and there are no facts or circumstances which would adversely affect the forecasted financial information in any material respect. *See Exhibits R-T, Section 12*.

112. Each transaction included voluminous "Official Statements" as board of the closing and bond issuance, to which the above representations refer.

113. Desak knew or should have known that the representations were inaccurate: the forecasted financial statements are based on a 5% vacancy rate, 4.5% of management fees, assume no property taxes, and range from $300-$500 per unit for repair/rehabilitation costs (as those terms may slightly vary between Portfolios).

114.    Desak knew or should have known, based upon the prior portfolios or its experience (or in the case of Portfolio A, its lack of experience), that the assumptions underlying such forecasted financial information were not reasonable, as neither portfolio had a 5% vacancy rate and costs were well in excess of $300 per year per unit.

115.    After operating Portfolio A, the misrepresentations become more egregious, as Desak knew that vacancy rates were far above 5%, and costs to repair/rehabilitate the projects were far above the projected costs.  As a result, Desak knew (without having disclosed that information with BHF), that the financial projections relied upon were inaccurate and not commercially reasonable.

116.    Desak made these representations with the intent that BHF, Lindran, BHF B, and BHF C, respectively, would rely on these representations to obtain financing.

117.    As a result, BHF, through its subsidiaries, acquired the properties for amounts in excess of the fair market value, without adequate reserves, and potentially moved forward with transactions that it should have not closed on.

118.    As a result of Desak's misrepresentations, BHF has suffered substantial damages in acquiring properties above fair market value, with insufficient capital for ongoing capital costs and repair expenses, and other damages to be determined.

WHEREFORE, Plaintiff Better Housing Foundation, Lindran, BHF B, and BHF C pray that this Court:

A.      Enter a money judgment against Defendant Desak Development Corp. for Better Housing Foundation's damages in an amount in excess of $10,000,000, plus interest, fees, costs, and attorneys' fees, the specific amount of which will be determined at trial; and

B.      Such other and further relief as the Court deems just and equitable.

## TENTH CLAIM FOR RELIEF
## DECLARATORY JUDGMENT
### (BHF, Lindran, BHF B, and BHF C Claim Against Integrus and DeAngelis)

119.    Plaintiffs restate and reallege paragraphs 1-118 above, as if fully set forth herein.

120.    Integrus and DeAngelis committed fraud and misrepresentation in obtaining the release clause set forth in the Termination Agreements.

121.    Integrus and DeAngelis intentionally withheld or misstated critical information in submitting the March 15 Property Statement and surrounding conversations. *See Exhibit O.*

122.    Integrus and DeAngelis intentionally withheld material information that the Properties (particular in Portfolio A) were subject to numerous pending City of Chicago lawsuits, in derogation of its duties to advise on pending litigation. *See Exhibits C, G, and K, Section 16.*

123.    The Property Statement intentionally mischaracterizes the condition of the Portfolio A and Portfolio B Properties, intentionally omits the numerous City of Chicago pending lawsuits for breaches of the Chicago Building Code and other municipal ordinances, and fails to state numerous facts which are material and relevant to the BHF Board of Director's decision making process.

124.    Integrus and DeAngelis intentionally misrepresented and omitted facts with the intent of inducing BHF to release Integrus and DeAngelis from obligations and liabilities related to the Properties.

125.    The Plaintiffs reasonably relied on Integrus and DeAngelis' omissions and misstatements to its detriment, and have suffered or will suffer damages as a consequence.

126.    The release provisions of the Termination Agreements should be rescinded due to Integrus and DeAngelis misrepresentations and omissions.

127.    Furthermore, the Termination Agreements were subject to and conditioned upon Integrus and DeAngelis providing final accounting and turnover of all documents and papers related to the Properties, as required by Section 16 of the Management Agreements.

128.    Since Integrus and DeAngelis failed to provide the final accounting and perform the turnover obligations, there was a failure and lack of consideration for the Termination and Release Agreements.

129.    Without sufficient consideration, the Termination Agreements are ineffective and invalid.

130.    There exists a dispute or controversy regarding the validity of the Termination Agreements, particularly the release language.

131.    The Plaintiffs bring this cause of action seeking a declaration that the release language of the Termination Agreements should be rescinded as they were procured based upon fraud or misrepresentation, and that the release language of the Termination Agreements (or the Termination Agreements themselves) should be declared void or invalid as they were unsupported by adequate consideration due to Integrus and DeAngelis' failures to perform the turnover obligations.

WHEREFORE, Plaintiff Better Housing Foundation, Lindran, BHF B, and BHF C pray that this Court:

A.    Declare that the release language of the Termination Agreements should be rescinded as they were procured based upon fraud or misrepresentation;

B.    Declare that the release language of the Termination Agreements (or the Termination Agreements themselves) are void or invalid as they were unsupported by adequate consideration due to Integrus and DeAngelis failures to perform the remaining obligations; and

C.     Such other and further relief as the Court deems just and equitable.

January 24, 2019                              Respectfully submitted,

                                             Better Housing Foundation, an Ohio not for profit
                                             corporation; Lindran Properties, LLC, an Illinois
                                             limited liability company; BHF Chicago Housing
                                             Group B LLC, an Illinois limited liability company;
                                             and BHF Chicago Housing Group C LLC, an
                                             Illinois limited liability company,

                                                  Plaintiffs,

                                             By:   /s/ Phillip N. Coover
                                                   Phillip N. Coover (ARDC # 6292602)
                                                   Christopher Hopkins (ARDC # 6313066)
                                                   CLARK HILL PLC
                                                   130 E. Randolph St., Ste. 3900
                                                   Chicago, IL 60601
                                                   Telephone:  (312) 360-2500
                                                   pcoover@clarkhill.com
                                                   chopkins@clarkhill.com

                                                   ATTORNEYS FOR PLAINTIFFS